**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| ANGELICA ALTAMIRANO, | No. ED CV 12-1862-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on October 26, 2012, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits.  The parties filed Consents to proceed before the undersigned Magistrate Judge on December 5, 2012, and December 6, 2012.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 28, 2013, that addresses their positions concerning the disputed issue in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on April 11, 1966. [Administrative Record ("AR") at 66.]  She has a ninth grade education [AR at 160], and has past relevant work experience as a warehouse assembler and a vinyl cutter.  [AR at 143.]

On May 26, 2009, plaintiff filed her application for Disability Insurance Benefits, alleging that she has been unable to work since September 8, 2008, due to Sjogren's syndrome, fibromyalgia, back pain, neck pain, and carpal tunnel syndrome.  [AR at 66, 68-77, 135-37, 151-61, 175-95.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 68-79, 101.]  A hearing was held on April 20, 2011, at which time plaintiff appeared with counsel and testified with the assistance of a Spanish interpreter. [AR at 29-65.]  A medical expert and a vocational expert also testified.  [AR at 44-54, 57-64.]  On May 20, 2011, the ALJ determined that plaintiff was not disabled.  [AR at 8-28.]  On August 27, 2012, the Appeals Council denied plaintiff's request for review.  [AR at 1-6.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

1    Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

2    must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

3    53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

4

5                                                    IV.

6                             THE EVALUATION OF DISABILITY

7          Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

8    to engage in any substantial gainful activity owing to a physical or mental impairment that is

9    expected to result in death or which has lasted or is expected to last for a continuous period of at

10   least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

11

12   A.     THE FIVE-STEP EVALUATION PROCESS

13          The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

14   whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

15   828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

16   determine whether the claimant is currently engaged in substantial gainful activity; if so, the

17   claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

18   substantial gainful activity, the second step requires the Commissioner to determine whether the

19   claimant has a "severe" impairment or combination of impairments significantly limiting her ability

20   to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

21   If the claimant has a "severe" impairment or combination of impairments, the third step requires

22   the Commissioner to determine whether the impairment or combination of impairments meets or

23   equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

24   Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

25   If the claimant's impairment or combination of impairments does not meet or equal an impairment

26   in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

27   sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

28   and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to

1   perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a

2   prima facie case of disability is established.  The Commissioner then bears the burden of

3   establishing that the claimant is not disabled, because she can perform other substantial gainful

4   work available in the national economy.  The determination of this issue comprises the fifth and

5   final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828

6   n.5; Drouin, 966 F.2d at 1257.

7

8   **B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

9         In this case, at step one, the ALJ found that plaintiff did not engage in substantial gainful

10  activity during the period from her alleged disability onset date of September 8, 2008, through her

11  date last insured of December 31, 2010.  [AR at 13.][1]  At step two, the ALJ concluded that plaintiff

12  has the severe impairments of degenerative disc disease of the cervical spine; degenerative disc

13  disease of the lumbar spine, status-post laminectomy; Sjogren's syndrome; fibromyalgia; status-

14  post right carpal tunnel release; degenerative joint disease of the right knee; and a benign bone

15  cyst of the right femur.  [Id.]  At step three, the ALJ determined that plaintiff does not have an

16  impairment or a combination of impairments that meets or medically equals any of the impairments

17  in the Listing.  [AR at 14.]  The ALJ further found that plaintiff retained the residual functional

18  capacity ("RFC")[2] to perform "light work" as defined in 20 C.F.R. § 404.1567(b).[3]  Specifically, the

19  ALJ found that:

20              [Plaintiff] can lift 20 pounds occasionally and 10 pounds frequently;
             she can stand and/or walk for two hours out of an eight-hour workday
21           and sit for eight hours in an eight-hour workday with normal breaks
             such as every two hours.  She can occasionally stoop bend and climb
22

23  _____

    [1]   The ALJ concluded that plaintiff last met the insured status requirements of the Social
24  Security Act on December 31, 2010.  [AR at 13.]

25  [2]   RFC is what a claimant can still do despite existing exertional and nonexertional
    limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

26
    [3]   20 C.F.R. § 404.1567(b) defines "light work" as work involving "lifting no more than 20 pounds
27  at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a
    good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm
28  or leg controls."

stairs but cannot climb ladders, work at heights or balance. Concerning her right arm, [plaintiff] is precluded from forceful gripping, grasping or twisting, but she can perform frequent fine manipulation such as keyboarding and gross manipulation such as opening drawers and carrying files. She has no restrictions in her left hand. [Plaintiff] can perform occasional neck motions, can maintain a fixed head position for 15-40 minutes at a time on occasion but should avoid extremes of motions and she should hold her head at a comfortable position at other times. Moreover, [plaintiff] should avoid exposure to concentrated extreme odors.

[AR at 15.] At step four, the ALJ concluded that plaintiff was not capable of performing any past relevant work. [AR at 22.] At step five, the ALJ found, based on the vocational expert's testimony and the application of the Medical-Vocational Guidelines, that through her date last insured, "there were jobs that existed in significant numbers in the national economy that [plaintiff] could have performed." [Id.] Accordingly, the ALJ determined that plaintiff was not under a disability at any time from September 8, 2008, the alleged onset date, through December 31, 2010, the date last insured. [AR at 23.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to properly evaluate her credibility. [Joint Stipulation ("JS") at 4.] As set forth below, the Court agrees with plaintiff and remands the matter for further proceedings.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may only reject the claimant's testimony about the severity of her symptoms upon (1) finding evidence affirmatively suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons for doing so. See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); see also Lingenfelter, 504

1    F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  The factors to be

2    considered in weighing a claimant's credibility include: (1) the claimant's reputation for

3    truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's

4    testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and

5    (5) testimony from physicians and third parties concerning the nature, severity, and effect of the

6    symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th

7    Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).  If properly supported, the ALJ's

8    credibility determination is entitled to "great deference."  See Green v. Heckler, 803 F.2d 528, 532

9    (9th Cir. 1986).

10           Plaintiff testified that she walks her youngest son "about two blocks" to school, but that she

11   also sometimes rides with a neighbor in the neighbor's car to take her son to school.  [AR at 40.]

12   Plaintiff testified that she is able to "wash some dishes" and cook "maybe perhaps a couple of

13   times a week," but her husband and oldest son "pretty much do the bulk of the housework."  [AR

14   at 40-41.]  Plaintiff stated that she does not do any yard work.  [AR at 42.]  She stated that she has

15   "constant headaches" and "if [she] start[s] concentrating on something the pain intensifies."  [AR

16   at 43.]  Plaintiff also stated that she is in her recliner "[a]round two hours a day," and she spends

17   the rest of the day "[l]ying down in bed," "[w]alking around the house," and cooking "on good days."

18   [AR at 42.]  Plaintiff testified that she naps for "about 15 minutes about eight times a day" and that

19   she is able to go to church as long as she is able to alternate between standing and sitting.  [AR

20   at 42-43.]  Plaintiff testified that she has constant pain in her right wrist and around the bone on

21   the left side of her left wrist.  [AR at 55.]  Plaintiff added that she has significant pain in her right

22   thumb when she uses her "fingers for buttoning clothes or picking up small objects."  [Id.]  She

23   further testified that she would not be capable of performing even a job where she "could sit or

24   stand whenever [she] wanted" and "did not have to lift anything heavy" because of her constant

25   neck pain, her severe headaches, and the numbness and tiredness in her hands.  [AR at 56.]

26   Plaintiff testified that she cannot go from breakfast until dinner without lying down [id.], as lying

27   down helps reduce the pain in her back and legs, especially when she is in the recliner with her

28   legs up.  [AR at 57.]

At step one of the two-step credibility analysis, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." [AR at 17.]  The ALJ nevertheless found plaintiff's subjective complaints "less than fully credible." [AR at 22.]  At step two, then, as the record contains no evidence of malingering by plaintiff,[4] the ALJ was required to offer "specific, clear and convincing reasons" for rejecting her subjective symptom testimony.  See Lingenfelter, 504 F.3d at 1036.  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at 834); see also Dodrill, 12 F.3d at 918.

The ALJ found plaintiff's subjective symptom testimony "less than fully credible" because she found that: (1) plaintiff misrepresented her English speaking abilities; (2) plaintiff's representations about why she stopped working made it "questionable whether [her] inability to work is due to disability, a lack of motivation or possibly poor economic times"; (3) plaintiff failed to mention her frequent headaches to her doctors; (4) plaintiff did not receive treatment for her allegedly severe anemia; (5) plaintiff's right carpal tunnel and lumbar spine surgeries were "generally successful" in relieving the symptoms in her right hand and her back; (6) plaintiff received routine conservative treatment; (7) plaintiff's testimony of pain is not supported by objective medical evidence; and (8) plaintiff's allegedly limited daily activities "cannot be objectively verified with any reasonable degree of certainty."  [AR at 16-17.]

In discussing her first reason to discount plaintiff's subjective symptom testimony, the ALJ stated that plaintiff was "less than forthcoming about her English speaking abilities."  [AR at 16.] Plaintiff testified that she "somewhat" spoke English and could "read and write some English, as well."  [AR at 39.]  The ALJ found plaintiff's representations about her English abilities to be inconsistent with her past job of scanning and labeling items based on "English orders" and her ability to successfully pass the English portion of the United States citizenship test.  [AR at 16.]

---

[4]   The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.  In fact, the medical expert testified that there was no evidence in the record that plaintiff was malingering.  [AR at 53.]

1  First, however, the Court does not find that plaintiff's ability to scan and label items based on

2  "English orders" convincingly indicates that she was untruthful about her English speaking abilities.

3  Plaintiff's work history report reflects that in her job as an "assembler," plaintiff "printed the labels;

4  located and matched the labels with the correct boxes; placed the labels on the boxes…." [AR

5  at 164.] The work history report further indicates that plaintiff did not "do any writing" or "complete

6  reports" as part of this job. [Id.] Based on this description, plaintiff's prior ability to perform the job

7  of an assembler does not constitute substantial evidence that she was "less than forthcoming"

8  when she represented that she "somewhat" spoke English. Furthermore, plaintiff's ability to pass

9  the United States citizenship test does not convincingly demonstrate that she was not truthful

10 about her English speaking abilities. See Voong v. Astrue, 641 F. Supp. 2d 996, 1008 (E.D. Cal.

11 2009) (finding that the plaintiff's ability to pass the United States citizenship and California driver's

12 license tests did not discredit her testimony that she was illiterate and unable to communicate in

13 English). Finally, plaintiff relied on the services of an interpreter at the administrative hearing [AR

14 at 31-32], as well as at medical appointments in October 2008 [AR at 241] and October 2009 [AR

15 at 368], which suggests that plaintiff is not confident in her ability to independently communicate

16 about significant matters in English. For these reasons, substantial evidence does not support the

17 inference drawn by the ALJ on this matter (Moncada, 60 F.3d at 523), and the ALJ's identified

18 "inconsistency" regarding plaintiff's English speaking abilities is not a clear and convincing reason

19 to discount plaintiff's credibility.

20        Second, the ALJ discounted plaintiff's credibility by questioning the consistency of plaintiff's

21 statements regarding her employment. [AR at 16.] Plaintiff stopped working on September 11,

22 2007, and alleges that she became disabled on September 9, 2008, almost one year later. [AR

23 at 152.] On her disability application, plaintiff wrote that she stopped working because she "was

24 laid off" [AR at 136], and at the administrative hearing plaintiff testified that she stopped working

25 because she "could not function or do [her] duties or stand, and [she] was laid off." [AR at 35.]

26 Plaintiff further testified that she initially applied for unemployment, stating that she was "willing

27 and able to work full-time." [AR at 36.] Finally, plaintiff testified that she only received

28 unemployment benefits for three months because she later became unable to seek jobs or

1  perform work.[5] [AR at 37.]  As a result of these statements, the ALJ questioned whether plaintiff's

2  "inability to work was due to disability, a lack of motivation or possibly poor economic times."  [AR

3  at 36.]  However, plaintiff's statements are not inconsistent.  Plaintiff represented that she was

4  initially laid off because her work performance was suffering as a result of her health condition;

5  that she thereafter sought work and received unemployment benefits for three months because

6  she believed she could still perform full time work; and that nine months after she stopped looking

7  for work, she became unable to work due to her impairments.  Moreover, that plaintiff sought

8  employment when she was well enough to do so suggests an effort to support herself, in spite of

9  her health (Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005)), and the ALJ did not point to any

10  actual evidence that plaintiff lacks motivation to return to work.  Finally, the ALJ's assumption that

11  plaintiff's inability to work "is due to... poor economic times" because plaintiff was at one point laid

12  off and has not worked since that time is not a convincing reason to discredit plaintiff's subjective

13  symptom testimony.  Under that reasoning, the credibility of *every* Social Security claimant could

14  properly be discounted on the basis of an assumed inability to work due to economic, rather than

15  health, factors.  Neither the alleged inconsistency identified by the ALJ, nor the ALJ's

16  characterizations of the reasons underlying plaintiff's inability to work, amount to a clear and

17  convincing reason to discount her credibility.

18     Third, the ALJ discounted plaintiff's credibility because the ALJ found that plaintiff failed to

19  mention her headaches to her doctors "on numerous occasions."  [AR at 16.]  However, at step

20  two of the five-step evaluation process, the ALJ found plaintiff's headaches to be a non-severe

21  impairment and thus this reason is not a clear and convincing reason to discount her credibility

22  as to her *severe* impairments.  [AR at 14.]  The ALJ also noted that after May 2003, the "records

23  contain no other documentation of headaches or treatment for this pain," but this statement is not

24  supported by the record.  The medical records indicate that plaintiff suffered from headaches in

25  June 2003 [AR at 272, 276, 282, 293], February 2008 [AR at 306], December 2008 [AR at 217,

26

27  _____

28     [5]   A requirement for unemployment compensation is that the individual be "able to work and
    available for work that week."  Cal. Unemp. Ins. Code § 1253(c).

219, 223], and April 2009. [AR at 207, 302.]  In June 2003, plaintiff's headaches were reportedly relieved with aspirin.  [AR at 283.]  On December 5, 2008, the doctor "discussed injections for headaches" with plaintiff [AR at 223-24], and she underwent an injection for headache pain at that time.  [AR at 219-22.]  Finally, the medical expert acknowledged that plaintiff was being treated for neck pain and headaches.  [AR at 46.]  Thus, the ALJ's statement concerning plaintiff's headaches after May 2003, is not supported by the record, and even if there were an inconsistency between plaintiff's testimony concerning her headaches and the medical evidence of those headaches, that inconsistency would not be a clear and convincing reason to discount her credibility as to her *severe* impairments.

Fourth, the ALJ stated that plaintiff's anemia has not required any "aggressive treatment" and that she did not take any medication for this impairment.  [AR at 16, 56.]  However, at step two of the five-step evaluation process, the ALJ found plaintiff's anemia to be a non-severe impairment.  [AR at 14.]  Although plaintiff's anemia may not be a disabling impairment, plaintiff testified about other severe impairments that cause her constant pain in her legs and lower back. [AR at 57.]  Therefore, while a lack of treatment may be a legitimate reason to discredit plaintiff's allegations concerning limitations from her anemia, it does not discredit plaintiff as to her other disabling symptoms.

Fifth, the ALJ noted that plaintiff has had surgery for carpal tunnel syndrome in her right hand and surgery on her lumbar spine, but found that plaintiff's surgeries were "generally successful in relieving the symptoms." [AR at 16.]  Plaintiff underwent surgery for her right carpal tunnel syndrome on January 31, 2003.  [AR at 282.]  On August 27, 2010, however, plaintiff complained of pain in her right wrist and received an injection of Marcaine and Celestone.  [AR at 319, 383.]  Similarly, while plaintiff underwent a laminectomy in her lumbar spine on March 30, 2010 [AR at 378-80], plaintiff's treating doctor noted five months after the surgery that the pain had returned. [AR at 319, 383, 386.]  The medical expert, Dr. Samuel Landau, also acknowledged that plaintiff continues to have back pain. [AR at 45, 48.]  Based on the evidence showing that plaintiff continued to have pain in her right wrist and lumbar spine after her surgeries, the ALJ's fifth reason for rejecting plaintiff's credibility is not clear and convincing.

In discussing her sixth reason to discount plaintiff's subjective symptom testimony, the ALJ stated that since the surgical procedures, plaintiff's conservative treatment "suggests the claimant's symptoms and limitations were not as severe as [s]he alleged." [AR at 16.]   As discussed supra, however, plaintiff received an injection in her right wrist after her right carpal tunnel surgery, and plaintiff's orthopedic doctor prescribed her medication for her back pain and suggested she see her pain management doctor for an injection into her lower back. [AR at 383, 386.]   The ALJ pointed to nothing in the record to show that any specific treatment in addition to the treatment plaintiff was receiving is a standard method for treating her symptoms.   [AR at 16.] Indeed, there is no evidence in the record from any physician that something more could have been done that would have alleviated plaintiff's symptoms. See Lapeirre-Gutt v. Astrue, 382 Fed. Appx. 662, 664 (9th Cir. June 9, 2010) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3) ("A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist.").   Therefore, the ALJ's determination regarding the extent of plaintiff's treatment is not a clear and convincing reason to discount plaintiff's credibility.

Seventh, the ALJ discounted plaintiff's credibility concerning the extent of her alleged functional limitations because they are not supported by objective medical evidence. [AR at 16.] However, an ALJ may not discredit a claimant's testimony as to the severity of symptoms solely because the degree of pain alleged by the claimant is not supported by objective medical evidence. Bunnell, 947 F.2d at 344.   Since a disability determination cannot be made solely on the basis of objective medical evidence, the ALJ must consider plaintiff's subjective symptom testimony in reaching a conclusion about the credibility of plaintiff's statements. (Social Security Ruling[6] 96-7p.)   As discussed herein, none of the ALJ's other reasons is proper to reject plaintiff's credibility.   Therefore, a lack of corroborating objective evidence is an insufficient reason, on its own, for the ALJ to find plaintiff less than fully credible.

---

[6]   Social Security Rulings do not have the force of law.   Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1    Finally, the ALJ concluded that plaintiff is not fully credible because plaintiff's "allegedly
2    limited daily activities cannot be objectively verified with any reasonable degree of certainty" and,
3    even if they were, "it is difficult to attribute that degree of limitation to [plaintiff's] medical condition,
4    as opposed to other reasons...." [AR at 16-17.] "[O]bjective verifiability to a reasonable degree
5    of certainty is not a requirement imposed by law" in a Social Security case. Behymer v. Apfel, 45
6    F. Supp. 2d 654, 662 (N.D. Ind. 1999). Therefore, the ALJ used an incorrect standard to evaluate
7    plaintiff's daily activities. See id. (agreeing with the plaintiff that "objective verifiability to a
8    reasonable degree of certainty" is "not contained in the statute, regulations, rulings, or case law").
9    As for the ALJ's second part of this reason, her statement that plaintiff's degree of limitation could
10   be attributed to "other reasons" is not sufficiently specific to undermine plaintiff's statements. [AR
11   at 17.] See Lingenfelter, 504 F.3d at 1036; Dodrill, 12 F.3d at 918.  In the absence of a detailed
12   explanation of the "other reasons" that could underlie the limited nature of plaintiff's daily activities,
13   this Court is unable to engage in a meaningful review of this issue.

14   The ALJ did not offer a legally adequate reason to discount plaintiff's subjective symptom
15   testimony.  Remand is warranted.
16   /
17   /
18   /
19   /
20   /
21   /
22   /
23   /
24   /
25   /
26   /
27   /
28   /

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly evaluate plaintiff's subjective symptom testimony. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: July 24, 2013

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE